IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

NO. 4:20-CV-52-FL

| HAROLD COX, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| MICHAEL LAMM, in his individual and official capacity; THE CITY OF ROCKY MOUNT, NORTH CAROLINA; JAMES MOORE, in his individual and official capacity; WILLIE WILLIAMS, in his individual and official capacity; and GEORGE D. ROBINSON, in his individual and official capacity, | ) ) ) ) ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

This matter comes before the court on defendants' motion for partial judgment on the pleadings, pursuant to Federal Rule of Civil Procedure 12(c). (DE 21). The issues raised have been fully briefed, and in this posture are ripe for ruling. For the reasons that follow, defendants' motion is granted in part and denied in part.

### STATEMENT OF THE CASE

Plaintiff commenced this action on March 24, 2020, alleging various federal claims against defendants under the Fourth and Fourteenth Amendments to the United States Constitution pursuant to 42 U.S.C. § 1983. Plaintiff also asserts claims against defendants under the North Carolina Constitution and North Carolina common law. In total, plaintiff alleges twelve separate

claims against defendants.[1] Defendants answered plaintiff's complaint on May 13, 2020, denying liability. On May 22, 2020, defendants amended their answer and filed the instant motion, seeking dismissal of all but two of plaintiff's claims.[2] Pursuant to the court's case management order entered the same day, discovery is ongoing.

## STATEMENT OF THE FACTS

The facts alleged in the pleadings may be summarized as follows. Plaintiff is a citizen and resident of Edgecombe County, North Carolina. (Compl. ¶ 4). At times relevant to the instant litigation, defendant Michael Lamm ("Lamm") was an officer with the Rocky Mount Police Department. Defendants James Moore ("Moore"), Willie Williams ("Williams"), and George Robinson ("Robinson") are current and former police chiefs of the Rocky Mount Police Department, and supervisors of defendant Lamm at various times. (Id. ¶¶ 7–9). Defendant City of Rocky Mount ("Rocky Mount") is a municipality, of which the Rocky Mount Police Department is an agency and subdivision. (Id. ¶ 6).

On or around September 7, 2018, plaintiff sat outside on the front porch of his home, watching traffic and passersby. (Id. ¶ 17). That evening, Latoya Sherrie Hines ("Hines") trespassed on plaintiff's property and attacked Sammy Lee Morgan ("Morgan") who was passing through plaintiff's front yard. (Id. ¶ 18). Plaintiff called 911 for assistance diffusing the altercation between Hines and Morgan and allowed Morgan to shelter in plaintiff's home to avoid being assaulted by Hines. (Id. ¶ 19).

Defendant Lamm responded to the scene and ran towards plaintiff's porch. (Id. ¶ 20). As law enforcement arrived, plaintiff came outside. (Id.). Defendant's Lamm's first action upon

---

[1] Though numbered up to thirteen, plaintiff's complaint does not assert a fifth cause of action.

[2] Those claims are asserted against defendant Lamm under § 1983 for false arrest and use of excessive force in violation of the Fourth and Fourteenth Amendments.

arrival at the scene was to body-slam plaintiff to the ground before addressing the reason for his 911 call. (Id. ¶ 21). Plaintiff offered no physical or verbal resistance to being placed in handcuffs, and he posed no threat to anyone. (Id. ¶ 22). Plaintiff was injured by defendant Lamm and required medical treatment. (Id. ¶¶ 23–25). Plaintiff alleges that defendant Lamm had recently joined the Rocky Mount Police Department and had limited experience controlling an active investigation scene. (Id. ¶ 26). Plaintiff further alleges that it was the official policy of the Rocky Mount Police Department that all officers receive training in constitutional law, crisis intervention, and community relationships. (Id. ¶ 27).

After plaintiff's release from the hospital, he tried multiple times to obtain a copy of any recorded video footage from the Rocky Mount Police Department, ultimately requiring assistance of counsel to secure the video footage. (Id. ¶ 28). More than six months after the incident, plaintiff was served an arrest warrant taken out by Defendant Lamm on September 8, 2018, falsely stating plaintiff assaulted Hines by hitting her with a homemade doorstop. (Id. ¶ 29). Plaintiff was forced to obtain counsel and defend against the charges, for which defendant Lamm and Hines did not appear as witnesses. (Id. ¶ 30). Plaintiff alleges that defendant Rocky Mount did not provide the parties to the criminal proceeding information regarding defendant Lamm, including an internal affairs investigation into the incident, the findings of which are unknown to plaintiff. (Id. ¶¶ 31, 34). The district attorney ultimately dismissed the charges. (Id. ¶ 32). Plaintiff alleges defendant Lamm's conduct violated departmental policy. (Id. ¶ 33).

Additional facts pertinent to the instant motion will be discussed below.

# COURT'S DISCUSSION

A.   Standard of Review

"After the pleadings are closed--but early enough not to delay trial--a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). In reviewing a motion for judgment on the pleadings, the court "appl[ies] the same standard as a 12(b)(6) motion to dismiss." Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc., 674 F.3d 369, 375 (4th Cir. 2012) (citing Burbach Broad. Co. of Delaware v. Elkins Radio Corp., 278 F.3d 401, 405–06 (4th Cir. 2002)). To survive a motion to dismiss" under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted).

B.   Analysis

   1.   42 U.S.C. § 1983 Claims

Plaintiff alleges several claims against defendants for violations of his Fourth and Fourteenth Amendment rights. In connection with the pending motion for judgment on the pleadings, the court turns to plaintiff's federal constitutional claims for improper training and supervision ("seventh claim") and unconstitutional policy or custom ("eighth claim").

a. Improper Training or Supervision

"Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the officials own individual actions, has violated the Constitution." Iqbal, 556 U.S. at 676. However, supervisory liability may be based "on a recognition that supervisory indifference or 'tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care." Slakan v. Porter, 737 F.2d 368, 372 (4th Cir.1984). Thus, a plaintiff must plausibly allege

> (1) that the supervisor had actual or constructive knowledge that h[er] subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff;
>
> (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices,"; and
>
> (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

Wilkins v. Montgomery, 751 F.3d 214, 226 (4th Cir. 2014) (quoting Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir.1994)).

"[T]he inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." City of Canton, Ohio v. Harris, 489 U.S. 378, 388 (1989). "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown, 520 U.S. 397, 410 (1997). "Thus, when city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program." Connick v. Thompson, 563 U.S. 51, 61 (2011). "[N]either a policy or

5

custom of deficient training nor the required causal connection can be shown by proof of a single incident of unconstitutional activity alone." Spell v. McDaniel, 824 F.2d 1380, 1385 (4th Cir. 1988) (internal citation omitted); see Wilkins, 751 F.3d at 226 ("[A] plaintiff 'may establish deliberate indifference by demonstrating a supervisor's continued inaction in the face of documented widespread abuses.'"); Randall v. Prince George's Cty., Md., 302 F.3d 188, 206 (4th Cir. 2002) (explaining that pervasive conduct is "conduct [that] is widespread, or at least has been used on several different occasions").

Here, plaintiff alleges that Rocky Mount Police Department "maintained a deficient program of training and supervision with regard[] to use of force, allowing officers to go untrained and unsupervised." (Compl. ¶¶ 86–87). Apart from this bare assertion, plaintiff does not allege facts from which the court can reasonably infer "a pervasive and unreasonable risk" of constitutional injury or "deliberate ignorance" on the part of defendants with regard to the Rocky Mount Police Department's training on use of force. No other alleged incidents of excessive force by untrained police officers proceed the events at issue, must less any other prior incidents involving defendant Lamm.

Plaintiff argues that he requires discovery to establish deliberate indifference on the part of defendants Rocky Mount, Moore, Williams, and Robinson in the training and supervision of defendant Lamm, and that he is not required to allege more than his own constitutional violations to sustain a supervisory liability claim. Plaintiff ignores the pleading standard applied in federal court following Twombly and Iqbal. To state a plausible § 1983 claim for supervisory liability, plaintiff must allege facts that allow the court to reasonably infer purposeful or deliberately indifferent conduct on the part of defendants Rocky Mount, Moore, Williams, and Robinson caused the constitutional violations in this case. The single incidence of alleged unconstitutional

conduct by defendant Lamm does not suffice. Accordingly, plaintiff's seventh claim against defendant Rocky Mount and defendants Moore, Williams, and Robinson in their individual capacities are dismissed without prejudice.[3]

      b.      Municipal Policy or Custom

"A municipality is not subject to section 1983 liability simply because a claimant is able to identify conduct attributable to the municipality." Riddick v. Sch. Bd. of City of Portsmouth, 238 F.3d 518, 524 (4th Cir. 2000) (internal quotations omitted) (citing Brown, 520 U.S. at 406–07). "[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." Hunter v. Town of Mocksville, N. Carolina, 897 F.3d 538, 553–54 (4th Cir. 2018) (quoting Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 694 (1978)); see Pembaur v. City of Cincinnati, 475 U.S. 469, 481–83 (1986). "'[A] municipality cannot be held liable' solely for the acts of others, e.g., 'solely because it employs a tortfeasor.'" Los Angeles Cty., Cal. v. Humphries, 562 U.S. 29, 36 (2010) (quoting Monell, 436 U.S. at 691).

"While municipal 'policy' is found most obviously in municipal ordinances, regulations and the like which directly command or authorize constitutional violations, . . . it may also be found in formal or informal ad hoc 'policy' choices or decisions of municipal officials authorized to make and implement municipal policy." Spell v. McDaniel, 824 F.2d 1380, 1385 (4th Cir. 1987) (emphasis and citations omitted). "'[C]ustom or usage' may be found in 'persistent and widespread . . . practices of [municipal] officials [which] [a]lthough not authorized by written law,

---

[3] Plaintiff's official capacity claims against defendants Moore, Williams, and Robinson are duplicative of his claims against defendant Rocky Mount. See Kentucky v. Graham, 473 U.S. 159, 165–66 (1985); Meyer v. Walls, 347 N.C. 97, 110 (1997). Accordingly, those official capacity claims against defendants Moore, Williams, and Robinson are dismissed.

[are] so permanent and well-settled as to [have] the force of law.'" Id. at 1386. A municipality is liable for a policy or custom if it is "(1) fairly attributable to the municipality as its 'own,' and is (2) the 'moving force' behind the particular constitutional violation." Id. "Neither the existence of such a policy or custom nor the necessary causal connection can be established by proof alone of the single violation charged." Id. at 1388 (citing City of Oklahoma City v. Tuttle, 471 U.S. 808, 823–24 (1985) (plurality opinion)).

Plaintiff's bare allegation of a "policy of excessive force," fails for similar reasons as his improper supervision claim. (See Compl. ¶¶ 83, 87, 94, 95). All plaintiff points to in support of his claim of a policy or custom are the alleged constitutional violations by defendant Lamm. (See id. ¶ 96). But such allegations are insufficient to plausibly state a claim for liability against a municipality.

As with his other claims, plaintiff invites the court to make a number of sweeping inferences based on the conclusory allegation that an unconstitutional policy or custom of excessive force exists, including 1) that the policy or custom is attributable to defendant Rocky Mount, and 2) that causation is implicit because of the existence of that policy. Just as the court declines to credit the bare assertion of a policy or custom, the court declines to make such inferences. Plaintiff's eighth claim is dismissed without prejudice.

    2.    State Tort Law Claims

Plaintiff alleges state law tort claims against defendant Lamm for negligence and gross negligence (sixth claim); defendants Rocky Mount and Lamm for assault and battery (ninth claim); defendants Rocky Mount, Moore, Williams, and Robinson for negligent and grossly negligent training and supervision (tenth claim); defendants Rocky Mount, Moore, Williams, and Robinson for negligent and grossly negligent hiring and retention (eleventh claim); and defendants Rocky

Mount and Lamm for malicious prosecution and abuse of process (twelfth claim).

a. Governmental Immunity

"Governmental immunity is that portion of the State's sovereign immunity which extends to local governments." Wray v. City of Greensboro, 370 N.C. 41, 47 (2017). "Under the doctrine of governmental immunity, a [city] is immune from suit for the negligence of its employees in the exercise of governmental functions absent waiver of immunity." Evans v. Hous. Auth. of City of Raleigh, 359 N.C. 50, 53 (2004) (internal citations omitted). One such "governmental function" is law enforcement. Croom v. Town of Burgaw, 259 N.C. 60, 61 (1963) (per curiam). Governmental immunity is a jurisdictional bar to state law tort claims. See, e.g., Myers v. McGrady, 360 N.C. 460, 465 n.2 (2006); Guthrie v. N. Carolina State Ports Auth., 307 N.C. 522, 524 n.1 (1983); Teachy v. Coble Dairies, Inc., 306 N.C. 324, 326–28 (1982).

"[A] municipality waives its governmental immunity only to the extent" of liability insurance that it obtains. Evans v. Hous. Auth. of City of Raleigh, 359 N.C. 50, 57 (2004); N.C. Gen. Stat. § 160A-485. However, excess liability insurance coverage over a municipality's self-insured retention amount does not waive governmental immunity. See, e.g., Ballard v. Shelley, 257 N.C. App. 561, 565–66 (2018); Hinson v. City of Greensboro, 232 N.C. App. 204, 212 (2014); Magana v. Charlotte-Mecklenburg Bd. of Educ., 183 N.C. App. 146, 149 (2007).

Here, defendant Rocky Mount purchased insurance policy number ZLP-15P3 1 76A-18-PA from Travelers Indemnity Company, covering law enforcement liability up to $1,000,000.00 from July 1, 2018, to July 1, 2019. (Liability Insurance Policy (DE 19-2) at 1–2). However, the insurance policy only provides coverage in excess of a self-insured retention limit of $100,000.00 for each Wrongful Act. (Liability Insurance Policy (DE 19-2) at 1, 16). Thus, the liability insurance policy purchased by defendant Rocky Mount did not waive governmental immunity for

9

plaintiff's state law tort claims.

Plaintiff argues that he is entitled to discovery on the issue of governmental immunity because he has alleged that defendant Rocky Mount waived governmental immunity through purchase of one or more insurance policies, purchase of a bond, participating in a local government risk pool, or by settling similar actions or claims. (Compl. ¶ 42 (citing N.C. Gen. Stat §§ 58-23-5, 153A-435, 162-8)). Plaintiff likewise argues that he is entitled to discovery because defendant Rocky Mount has adequate notice of the claims against it, relying upon Anderson By & Through Jerome v. Town of Andrews, 127 N.C. App. 599, 600 (1997) and Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999). Again, the authorities on which plaintiff relies invoke the notice pleading standard long since retired from federal court. Iqbal, 556 U.S. at 663; Twombly, 550 U.S. at 570. Plaintiff's bare assertion of waiver of governmental immunity fails in the face of defendant Rocky Mount's showing that no waiver of governmental immunity has occurred.

Accordingly, plaintiff's sixth, ninth, tenth, eleventh, and twelfth claims for relief against defendant Rocky Mount and individual defendants in their official capacities are dismissed without prejudice.

    b.  Negligent Hiring, Retention, Training, and Supervision

The court turns its attention specifically to plaintiff's tenth and eleventh individual capacity claims against defendants Moore, Williams, and Robinson.

A claim for negligent training supervision or negligent hiring and retention is "entirely independent of the employer's liability under the doctrine of respondeat superior." Braswell v. Braswell, 330 N.C. 363, 373 (1991) (emphasis in original). To state a claim, plaintiffs must allege

> (1) the specific negligent act on which the action is founded . . . [;] (2) incompetency, by inherent unfitness or previous specific acts of negligence, from which incompetency may be inferred; [] (3) either actual notice to the master of such unfitness or bad habits, or constructive notice, by showing that the master

10

could have known the facts had he used ordinary care in 'oversight and supervision,' . . . ; and (4) that the injury complained of resulted from the incompetency proved.

Medlin v. Bass, 327 N.C. 587, 590–91 (1990) (emphasis omitted) (quoting Walters v. Lumber Co., 163 N.C. 536, 541 (1913)). An employer's liability may also extend to an incompetent employee's intentional torts. See, e.g., Wegner v. Delly-Land Delicatessen, Inc., 270 N.C. 62, 65 (1967); Lamb v. Littman, 128 N.C. 361, 363–64 (1901).

Plaintiff does not allege facts demonstrating inherent unfitness or specific acts of negligence, either when defendant Lamm was hired or before the incident with plaintiff, that would have put defendants Moore, Williams, and Robinson on notice of defendant Lamm's incompetence. See Efird v. Riley, 342 F. Supp. 2d 413, 430 (M.D.N.C. 2004) ("Plaintiff has alleged that her male co-workers engaged in sexual harassment against her in violation of Title VII and that Sheriff Riley knew about their behavior."). All plaintiff alleges is that defendant Lamm "recently joined the [RMPD] and had limited experience controlling an active investigation." (Compl. ¶ 26). To infer from these facts that defendants Moore, Williams, and Robinson were negligent in hiring, retaining, training, or supervising defendant Lamm is speculative. Being new to a job or having limited training and experience simply are not enough to put supervisors on notice of inherent unfitness. Plaintiff's arguments to the contrary are speculative.[4] Accordingly, plaintiff's tenth and eleventh claims against defendants Moore, Williams, and Robinson in their individual capacities are dismissed without prejudice.

---

[4] For similar reasons, the court concludes that defendants Moore, Williams, and Robinson are entitled to public official immunity on the facts alleged. See Grad v. Kaasa, 312 N.C. 310, 313 (1984); In re Annexation Ordinance No. 300-X, 304 N.C. 549, 551 (1981); Smith v. State, 289 N.C. 303, 331 (1976). Plaintiff, points to the same speculative allegations, as well as a post-hoc internal investigation that could not have revealed defendant Lamm's alleged incompetency prior to the incident in question, precluding an inference of malice on such basis. (See Compl. ¶¶ 26–27, 84, 98, 121).

### 3. State Constitutional Claims

Plaintiff alleges claims against defendant Lamm for unconstitutional false arrest pursuant to Article I §§ 18, 19, 20 and 21 of the North Carolina Constitution (second claim); against defendant Lamm for unconstitutional use of excessive force pursuant to Article I §§ 18, 19, 20 and 21 of the North Carolina Constitution (fourth claim); and against defendant Rocky Mount and defendants Moore, Williams, and Robinson in their official capacities for violation of plaintiff's substantive due process rights pursuant to Article I §§ 1, 19 of the North Carolina Constitution (thirteenth claim).

North Carolina law provides that, "in the absence of an adequate state remedy, one whose state constitutional rights have been abridged has a direct claim against the State under our Constitution." Corum v. Univ. of N. Carolina Through Bd. of Governors, 330 N.C. 761, 782 (1992). "Plaintiff's common law cause of action for negligence does not provide an adequate remedy at state law when governmental immunity stands as an absolute bar to such a claim." Craig ex rel. Craig v. New Hanover Cty. Bd. of Educ., 363 N.C. 334, 339–40 (2009). In instances where governmental immunity bars plaintiff's claims, "plaintiff may move forward in the alternative, bringing his colorable claims directly under our State Constitution based on the same facts that formed the basis for his common law negligence claim." Id. In contrast, "the affirmative defense of public official immunity does not render common law tort claims inadequate" for purposes of determining if a direct claim under the state constitution may lie. DeBaun v. Kuszaj, 238 N.C. App. 36, 41 (2014); Wilcox v. City of Asheville, 222 N.C. App. 285, 302 (2012); Rousselo v. Starling, 128 N.C. App. 439, 448–49 (1998).

As discussed above, the court has dismissed plaintiff's state tort law claims against defendant Rocky Mount based on governmental immunity. Because governmental immunity acts

12

as a complete bar to plaintiff's state tort law claims, such causes of action are not are not adequate. Craig, 363 N.C. at 339–40.  However, plaintiff's state constitutional claims cannot proceed against defendant Lamm in his individual capacity, where state tort law provides an adequate remedy.

## CONCLUSION

Based on the foregoing, defendants' motion for judgment on the pleadings (DE 21) is GRANTED IN PART and DENIED IN PART.  The following claims are DISMISSED WITHOUT PREJUDICE:

1. All claims as to defendants Moore, Williams, and Robinson in their individual and official capacities;

2. Plaintiff's second and fourth claims as to defendant Lamm in his individual capacity, and plaintiff's sixth, ninth, and twelfth claims against defendant Lamm in his official capacity; and

3. Plaintiff's sixth, seventh, eighth, ninth, tenth, eleventh, and twelfth claims as to defendant Rocky Mount.

SO ORDERED, this the 28th day of August, 2020.

_____
LOUISE W. FLANAGAN
United States District Judge